IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JUSTIN LAMAR BOUCHILLON,

  Plaintiff,

v.

GWINNETT COUNTY, et al.,

  Defendants.

CIVIL ACTION FILE

No. 1:21-CV-05226-SCJ

**ORDER**

This matter appears before the Court on Defendants' Motion to Dismiss. Doc. No. [2].[1] Plaintiff responded in opposition (Doc. No. [6]), and Defendants replied (Doc. No. [11]). The Court rules as follows.

**I. BACKGROUND**

The Court draws facts primarily from the Complaint (Doc. No. [1-1]), accepting all well-pleaded facts as true and viewing them in the light most

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

favorable to Plaintiff. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1056 (11th Cir. 2007).

On Friday, July 26, 2019, Gwinnett County Police Department ("GCPD") command staff, including then-acting Chief Tom Doran and Assistant Chief Jesse Jones, instructed Corporal Eric Cline, Sergeant Scott Barrett, and Captain Steven Claghorn to arrest Plaintiff. Doc. No. [1-1], ¶ 14. The misdemeanor arrest warrant stated that Plaintiff had violated a bond condition ordering no contact with his then-estranged wife by messaging her mother and sister through social media. Id. ¶ 15. When Corporal Cline, Sergeant Barrett, and Captain Claghorn arrived at Plaintiff's residence, Plaintiff informed them that he would turn himself in the following Monday. Id. ¶ 16. Plaintiff, who was then a twenty-year veteran of the GCPD, was confused as to why this warrant was being served because (1) he had not made any contact with his wife and (2) it was Plaintiff's understanding that the GCPD, under its standard operating procedures, did not serve misdemeanor warrants. Id. ¶ 17. According to Plaintiff, the officers on the scene also questioned why they were being ordered to serve the warrant. See id. ¶ 18. Despite their reservations, however, those officers became aggressive and refused to leave Plaintiff's residence after Plaintiff stated he would turn himself in later. Id. ¶ 19.

2

Plaintiff then separated himself from the officers by staying inside his house. See id. ¶ 20. Around this time, Plaintiff called his friend and colleague, Lieutenant Rick Klok, to discuss the incident unfolding at Plaintiff's residence; they would speak several times over the next hours. Id. ¶¶ 21–22. Lieutenant Klok informed Plaintiff that if he did not exit his house, the incident "would not end well." Id. ¶ 22. Plaintiff told Lieutenant Klok that he hoped no officer would get hurt and that he "would hate to hurt a brother in blue." Id. ¶ 23.[2] At some point, Lieutenant Klok informed the officers on the scene that Plaintiff may have been suicidal, but those officers did not attempt to deescalate the situation. Id. ¶¶ 26–27. Rather, the GCPD command staff called in backup, which resulted in 100 additional officers, the SWAT/SRT team, and armored vehicles arriving on the scene. Id. ¶ 28.

By the time the backup officers arrived, and unbeknownst to the officers already on the scene, Plaintiff had exited the back door of his house and gone into woods behind his house. See id. ¶¶ 29, 31. At some point, Plaintiff told

---

[2] Plaintiff asserts that (1) he did not threaten Lieutenant Klok or any other individual and (2) Lieutenant Klok did not find Plaintiff's statements to be threatening. Doc. No. [1-1], ¶¶ 24–25.

Lieutenant Klok by phone that he intended to turn himself in to the GCPD and that he would meet the officers on the scene at a picnic table behind his home. Id. ¶ 30. Plaintiff then emerged barefoot from the woods, wearing shorts and a t-shirt and carrying only his shoes. Id. ¶¶ 31–32.

Plaintiff approached the officers, who shouted conflicting commands at him—for example, one officer ordered him to put his hands up, and another ordered him to lie down and place his shoes on the ground. Id. ¶¶ 34–35. Plaintiff was confused about which command to follow, so he remained standing with his hands in the air to show that he was not armed and that he did not intend to harm the officers or himself. Id. ¶ 36. Defendant E.S. Boyd, a GCPD officer, believed that Plaintiff was disobeying the order to lie down. Id. ¶ 37. Reacting to this perceived defiance, Officer Boyd drew his taser and tased the unarmed Plaintiff for about ten seconds. Id.[3]

Plaintiff alleges that the section of the GCPD's General Orders concerning use of force provides that a core principle is to "gain voluntary compliance of subjects, when consistent with personal safety, to eliminate the need to use force

---

[3] For context, Plaintiff provides that an average taser pulse cycle lasts five seconds, so "Plaintiff endured at least two full pulse cycles." Doc. No. [1-1], ¶¶ 38–39.

or reduce the force that is needed." Id. ¶ 40. Plaintiff also alleges that the GCPD General Orders state that officers "will use de-escalation techniques to prevent or reduce the need for force when it is safe and feasible to do so." Id. ¶ 41. The General Orders also allegedly provide that force should not be used "unless other reasonable alternatives have been exhausted or would clearly be ineffective under the particular circumstances." Id. ¶ 42. Under the General Orders, an officer may use "deadly force" only when he or she "reasonably believes that the action is in defense of human life, including the officer's own life, or in defense of any person in imminent danger of death or serious bodily injury." Id. ¶ 43. Plaintiff also alleges that the GCPD uses a "Police S.W.A.T. Matrix" with five categories to determine whether S.W.A.T. is needed to serve and execute a warrant. Id. ¶ 45. Plaintiff alleges that Defendants violated the General Orders and the S.W.A.T. Matrix by not deescalating his encounter with GCPD officers, deciding to call S.W.A.T. to the scene, and "immediately resorting to deadly force against Plaintiff" when he posed no threat to the officers. See id. ¶¶ 46–47.

After Plaintiff was tased, GCPD command staff, including Acting Chief Doran and Assistant Chief Jones, ordered then-Sergeant Dennis Hennley to have Corporal C.J. Lymber take out an "unsubstantiated warrant against Plaintiff

claiming obstruction of law enforcement against Officer Boyd." Id. ¶ 48. When Corporal Lymber asked Officer Boyd for details regarding the obstruction claim, Officer Boyd could state only that Plaintiff had been uncooperative. Id. ¶ 49. A magistrate judge signed the arrest warrant, even though that judge allegedly questioned why Corporal Lymber was taking out the warrant rather than Officer Boyd or other officers who had witnessed and could swear to the alleged obstruction. See id. ¶¶ 50–53. Plaintiff alleges that there is evidence to support Sergeant Hennley and Corporal Lymber's "suspicions that they were asked to obtain the warrant to justify" Officer Boyd's actions. Id. ¶ 54. Similarly, Plaintiff alleges that there was a "conspiracy to issue a warrant for a crime that was not witnessed by the officers swearing out [the] warrant." Id. ¶ 55. Later, over the objections of certain officers, the GCPD command staff directed Corporal Lymber to "take out a second unsubstantiated and false warrant alleging terroristic threats." Id. ¶ 56. This warrant allegedly did not include the personal knowledge of Corporal Lymber or Sergeant Hennley and instead falsely stated that it was corroborated by witnesses who could not have heard the alleged threat that would have been conveyed by the phone conversation with Lieutenant Klok, which was not recorded. See id. ¶¶ 57–62. Also, Assistant Chief Jones allegedly

6

called the Athens-Clarke County Solicitor to revoke bond on a pending case in that county, which resulted in Plaintiff being incarcerated for fifteen days. See id. ¶¶ 63–64.

Ultimately, the Gwinnett County District Attorney's Office determined there was not probable cause to pursue a charge against Plaintiff, and all charges against Plaintiff were dropped. Id. ¶¶ 65–66.

On November 23, 2021, Plaintiff filed this action against Defendants in the Superior Court of Gwinnett County, Georgia. Doc. No. [1-1]. Plaintiff alleges that the above incidents have caused him to suffer various injuries and lose his job. Id. ¶¶ 67–70. Defendants in this action are Gwinnett County; the GCPD; Officer Boyd, in his individual capacity as a GCPD officer; Chief Doran, in his individual capacity as former chief of the GCPD; Assistant Chief Jones, in his individual capacity as Assistant Chief of the GCPD; and Corporal Lymber, in his individual capacity as a corporal for the GCPD. Id. p. 1.[4] Plaintiff brings the following claims against Defendants: Violation of his Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 ("Count One"); and "Claims pursuant to State Law,"

---

[4] When appropriate, the Court will refer to Officer Boyd, Chief Doran, Assistant Chief Jones, and Corporal Lymber collectively as the "Individual County Defendants."

7

which include claims under O.C.G.A. § 51-1-13 for physical injury, O.C.G.A. § 51-1-14 for violent injury, O.C.G.A. § 51-7-1 for false arrest, O.C.G.A. § 51-7-20 for false imprisonment, O.C.G.A. § 51-7-40 for malicious prosecution, and O.C.G.A. § 51-5-1 *et. seq.* for defamation of character ("Count Two"). Id. ¶¶ 80–109.[5] As stated in the Complaint, the claims in Count One are asserted against Officer Boyd, and the claims in Count Two are asserted against the Individual County Defendants.

Defendants timely removed this action to this Court. Doc. No. [1]. They later moved to dismiss this action in its entirety. Doc. No. [2]. Plaintiff opposes the motion (Doc. No. [6]), and Defendants replied in further support (Doc. No. [11]). The Court will discuss the parties' arguments in greater depth below. This matter is now ripe for review, and the Court rules as follows.

---

[5] Plaintiff also states in the body of the Complaint that he is bringing "an action for intentional infliction of emotion[al] distress under O.C.G.A. § 15-1-19." Doc. No. [1-1], ¶ 79. That claim, however, is not located in Count Two under his state-law claims. See id. ¶¶ 87–109. The only other part of the Complaint that discusses this potential claim is under the "General Damages" section, with the allegation that Plaintiff "suffered extreme mental and emotion[al] distress from experiencing [Defendants'] outrageous, violent and intentional acts." Id. ¶ 70. Defendants do not address this potential claim in their Motion to Dismiss. See Doc. No. [2]. Absent further briefing from the parties, the Court declines to address whether Plaintiff states a claim for intentional infliction of emotional distress.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks omitted and alteration adopted). Rule 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form and must be construed "so as to do justice." Fed. R. Civ. P. 8(d)(1), (e).

A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6). A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 555 U.S. 662, 687 (2009); Twombly, 550 U.S. at 561–62, 570. Labels, conclusions, and formulaic recitations of the elements of the cause of action "will not do." Twombly, 550 U.S. at 555. To state a plausible claim, a plaintiff need only plead "factual content that allows the court

9

to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted).

## III.    ANALYSIS

Because Defendants move to dismiss under various legal arguments, the Court will address each argument separately in turn.

### A.    **The Gwinnett County Police Department Is Due to Be Dismissed Because It Is Not a Legal Entity Capable of Being Sued**

Defendants argue that the GCPD should be dismissed from this action because it is not a legal entity capable of being sued. Doc. No. [2-1], 4–5. Plaintiff concedes this point. Doc. No. [6], 6–7. A review of the relevant authority confirms that the GCPD is not a legal entity capable of being sued. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[P]olice departments are not usually considered legal entities subject to suit."); see also Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006); Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005);

10

Robinson v. City of Darien, 362 F. Supp. 3d 1345, 1376 (S.D. Ga. 2019) (dismissing claims against a police department because it was "a non-legal entity incapable of suing or being sued"); Bunyon v. Burke Cnty., 285 F. Supp. 2d 1310, 1328–29 (S.D. Ga. 2003) (citing "Georgia law and cases from this circuit" to dismiss a police department from a § 1983 lawsuit). Thus, the Court finds that the GCPD is due to be dismissed from this action.

### B. Gwinnett County Is Due to Be Dismissed Because Plaintiff Fails to State a Claim Against It and Has Not Shown a Waiver of Sovereign Immunity

Next, Defendants argue that Gwinnett County should be dismissed from this action because (1) Plaintiff's Complaint fails to state any claims against the County and (2) sovereign immunity bars any potential claims against the County. Doc. No. [2-1], 5–6.[6]

Plaintiff opposes this portion of Defendants' Motion. Doc. No. [6], 7–9. Plaintiff argues that a county can be subject to liability under 42 U.S.C. § 1983 if the Complaint alleges an unconstitutional act that is the product of a policy or

---

[6] Defendants reiterate in their reply brief that Gwinnett County should be dismissed from this action because while the Complaint expressly sets forth claims against the Individual County Defendants, it does not explicitly make any claim against the County. Doc. No. [11], 2–3.

regulation by a county that is adopted and promulgated by the county's officers. Id. at 7–8. Here, Plaintiff contends that the Complaint alleges that the County's Chief of Police and Assistant Chief of Police "intentionally conspired to deprive Plaintiff of his civil rights under both § 1983 and state tort laws," which "is clearly within the powers of Gwinnett County," and which demonstrates an informal custom of the County. Id. at 8–9. Plaintiff also argues that the high-level decisions to (1) "escalate" the encounter with him in violation of internal policies and (2) take out "two patently false and unsubstantiated warrants" both demonstrate a governmental custom that subjects Gwinnett County to liability. Id. at 9.

Sovereign immunity "protects all levels of governments from legal action unless they have waived their immunity from suit." Conway v. Jones, 353 Ga. App. 110, 111, 836 S.E.2d 538, 540 (2019) (citation omitted). Sovereign immunity can be waived only by an Act of the Georgia General Assembly specifying that sovereign immunity is waived and the extent of such waiver. Id. at 111–12, 836 S.E.2d at 540. Counties in Georgia may enjoy sovereign immunity. Layer v. Barrow Cnty., 297 Ga. 871, 871, 778 S.E.2d 156, 158 (2015). Because sovereign immunity is a complete immunity from suit, rather than simply a defense to liability, the question of whether a county has waived its sovereign immunity is

12

a threshold issue. McCobb v. Clayton Cnty., 309 Ga. App. 217, 217–18, 710 S.E.2d 207, 209 (2011); see also Conway, 353 Ga. App. at 111, 836 S.E.2d at 540 (stating that a claim barred by sovereign immunity is subject to dismissal). "[T]he party seeking the waiver of immunity has the burden of proof." Gwinnett Cnty. v. Ashby, 354 Ga. App. 863, 864, 842 S.E.2d 70, 72 (2020).[7]

Further, to state a claim against a municipal entity under 42 U.S.C. § 1983, a plaintiff must "allege that the municipality employed a custom or policy that caused [the plaintiff's] constitutional rights to be violated." Horne v. Soc. Sec. Admin., 359 F. App'x 138, 145 (11th Cir. 2010). If a plaintiff alleges that a municipality is liable under § 1983 for unconstitutional acts of its employees, the claim against the municipality fails if the complaint does not allege that the acts of those employees "were based on a municipality custom or policy or that the municipality failed to adequately train its employees." Woody v. Cronic, 401 F. App'x 509, 511 (11th Cir. 2010).

---

[7] To the extent relevant here, the Georgia Tort Claims Act, O.C.G.A. § 50–21–20 *et seq.*, does not waive the sovereign immunity of counties. Woodard v. Laurens Cnty., 265 Ga. 404, 405, 456 S.E.2d 581, 582–83 (1995).

First, the Court finds that Gwinnett County is due to be dismissed because the Complaint contains no claims against it. Certainly, Plaintiff is correct that one can state a claim against a county under § 1983 by alleging that its policy or custom caused a constitutional violation. But Plaintiff makes no such allegations in his Complaint. Although the Complaint discusses county policies, including the GCPD's General Orders and S.W.A.T. Matrix (see, e.g., Doc. No. [1-1], ¶¶ 40–47), Plaintiff does not allege that these policies caused his injuries. Rather, he alleges that he was injured when the Individual County Defendants *failed to follow* these policies. That is different from a situation where a county has a policy that, when followed by county employees, causes a constitutional violation. Because Plaintiff alleges that Gwinnett County's employees did not adhere to the policies, the Court cannot find allegations that these municipal customs or policies caused Plaintiff's injuries. And Plaintiff's briefing arguments do not convince the Court otherwise.

Moreover, Plaintiff never expressly alleges in his Complaint that Gwinnett County had a custom or policy that caused the violation of Plaintiff's rights. This finding is reinforced by Counts One and Two, which bring claims against only the Individual County Defendants. No section of the Complaint explicitly states

14

a claim against—let alone any act by—Gwinnett County. Based on Plaintiff's response brief, it appears that Plaintiff intended for this Court to connect the dots among (1) acts taken by the Individual County Defendant, (2) a custom or policy of Gwinnett County, and (3) a resulting claim directly against Gwinnett County. But it is Plaintiff's burden to plead his claims in his Complaint, and the Court will not connect those dots for him. After all, Rule 8 sets forth a pleading standard in part "to give [a] defendant fair notice of" the claim against it. Twombly, 550 U.S. at 555. A complaint that sets out claims and does not expressly relate a certain defendant to those claims does not put that defendant on notice of claims against it. That is the case here.[8]

Finally, the Court finds that any potential state-law claim against Gwinnett County is due to be dismissed because the County enjoys sovereign immunity. It is Plaintiff's burden to establish a waiver of sovereign immunity. He has failed to

---

[8] Similarly, when a plaintiff fails to allege facts that connect named defendants to the allegations supporting a claim, that claim fails against those defendants. See Douglas v. Yates, 535 F.3d 1316, 1321–22 (11th Cir. 2008) (finding that even if a plaintiff sufficiently alleges a constitutional violation, a complaint cannot state a claim against a defendant when it "fails to allege facts that associate [the defendant] with [the alleged] violation"). Here, the Complaint does not expressly allege any acts by Gwinnett County, such as the formation or maintenance of a custom or policy that caused Plaintiff's constitutional injuries. That pleading deficiency supports dismissal of Gwinnett County.

15

carry his burden because no facts in his Complaint indicate that Gwinnett County does not enjoy sovereign immunity. See Jones v. Fransen, 857 F.3d 843, 855 (11th Cir. 2017) (determining that Gwinnett County enjoyed sovereign immunity when the plaintiff had failed to establish a waiver of sovereign immunity); Hudson v. Morris, No. 4:20-CV-120, 2021 WL 2188571, at *8 (S.D. Ga. May 28, 2021) (finding that a plaintiff did not "carry this burden" because he had not "raise[d] any facts in his Amended Complaint indicating that sovereign immunity does not protect Defendants" or "allege[d] that Defendants waived sovereign immunity"). Indeed, Plaintiff does not even address this issue in his response brief. Bohanan v. Paulding Cnty., Georgia, 479 F. Supp. 3d 1345, 1366 (N.D. Ga. 2020) (finding that a plaintiff had not carried her burden to show waiver of sovereign immunity when she failed to address this issue in her briefing).

Accordingly, the Court finds that Gwinnett County is due to be dismissed from this action because the Complaint does not state a claim against it.

**C.**   **Plaintiff States a Claim Against Officer Boyd Under 42 U.S.C. § 1983 for Violation of His Rights Under the Fourth Amendment, But Plaintiff Fails to State Such a Claim Under the Fourteenth Amendment**

Count One brings a claim against Officer Boyd under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourth and Fourteenth Amendments. Doc.

16

No. [1-1], ¶¶ 80–86. Plaintiff alleges that Officer Boyd had no reason to believe that Plaintiff was armed or dangerous and thus had no reasonable fear of imminent bodily harm when he tased Plaintiff. Id. ¶¶ 81–82. Plaintiff asserts that a reasonable officer would have known that using a taser against Plaintiff under those circumstances amounted to an "objectively unreasonable use of force." Id. ¶ 83. Plaintiff alleges that Officer Boyd's unreasonable use of force caused harm to Plaintiff and entitles Plaintiff to recovery. See id. ¶¶ 84–86.

Defendants argue that the Court should dismiss the § 1983 claim against Officer Boyd. Doc. No. [2-1], 7–13. First, they contend that Plaintiff does not state a claim under the Fourteenth Amendment because such excessive force claims relate only to pretrial detainees. Id. at 7 n.1. Then, looking to this claim under the Fourth Amendment, Defendants argue that Plaintiff fails to allege that Officer Boyd used unreasonable force. Id. at 7–8. Further, Defendants argue that Officer Boyd enjoys qualified immunity because he used "*de minimus* force" rather than deadly force when he employed his taser to apprehend Plaintiff. Id. at 8–13. They contend that caselaw from the Eleventh Circuit has established that a taser is not a deadly weapon and that courts have granted qualified immunity to officers who used tasers on arrestees or detainees. Id. at 11–13.

17

Plaintiff's response focuses on his Fourth Amendment claim and does not address his Fourteenth Amendment claim. See Doc. No. [6], 9–16. He argues that the decisions Defendants cite to support their argument that using a taser did not clearly violate Plaintiff's constitutional rights include only summary judgment decisions, which are not relevant to the pending motion to dismiss. See id. at 10–12. Similarly, Plaintiff argues that other cases cited by Defendants involved less dangerous actions by law enforcement officers, such as "pushing or shoving" rather than the use of a taser against a compliant suspect who was being detained for a minor, nonviolent crime. See id. at 12–15. Citing numerous cases, Plaintiff argues that Officer Boyd is not entitled to qualified immunity because there was clear pre-existing law establishing that the level of force Officer Boyd used violated Plaintiff's constitutional rights. Id. at 15–16.

Defendants reply that qualified immunity applies because Plaintiff cannot show that Officer Boyd violated a constitutional right that was clearly established at the time of the alleged violation. Doc. No. [11], 6–7. Defendants contend that Plaintiff failed to show that the preexisting law was so clear that, under the facts of the case, every reasonable officer would have known or had fair warning that Officer Boyd's actions violated Plaintiff's constitutional rights. Id. at 7–9.

18

To start, Plaintiff does not respond to Defendants' argument that he fails to state an excessive force claim under the Fourteenth Amendment. When a plaintiff fails to respond to an argument raised in a motion to dismiss, the claim at issue is deemed abandoned and subject to dismissal. Barnes v. AstraZeneca Pharms. LP, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017). Given Plaintiff's non-response to this argument, the Court finds that the Fourteenth Amendment claim against Officer Boyd is due to be dismissed.

Accordingly, the Court now turns to Plaintiff's Fourth Amendment claim. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). An officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "An officer's use of force is excessive under the Fourth Amendment if the use of force was 'objectively [un]reasonable in light of the facts and circumstances confronting' the officer." Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011) (quoting Graham, 490 U.S. at 397). A court assesses reasonableness objectively "from the perspective of a reasonable

19

officer on the scene." Graham, 490 U.S. at 396. This standard "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97.

Courts considering excessive force claims must "balance the necessity of using some force against the arrestee's constitutional rights." Teal v. Campbell, 603 F. App'x 820, 821 (11th Cir. 2015); see also Graham, 490 U.S. at 396 (stating that when analyzing reasonableness, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (cleaned up)). Factors courts should consider in this analysis include:

> (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; (3) whether he is actively resisting arrest or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and amount of force used; and (6) the extent of the injury inflicted.

Teal, 603 F. App'x at 821. When conducting this analysis, the court should keep in mind that an officer may use force that is "necessary in the situation at hand." Lee, 284 F.3d at 1197. Also, "the application of *de minimis* force, without more,

will not support a claim for excessive force." Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013) (citation and internal quotation marks omitted); see also Gold v. City of Miami, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (granting qualified immunity under *de minimis* force theory when the plaintiff's injury stemmed from allegedly tight handcuffs that the defendant officer refused to loosen for more than twenty minutes).

Qualified immunity functions as an immunity from suit. Morrison v. City of Atlanta, 614 F. App'x 445, 447 (11th Cir. 2015). Officials seeking qualified immunity must first establish that they were acting within their "discretionary authority when the alleged constitutional violation occurred." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009). The burden then shifts to the plaintiff, who can overcome the qualified immunity defense by showing that (1) the defendant's conduct violated a constitutional right and (2) this right was "clearly established at the time of the alleged violation." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010). A plaintiff can show a violation of a clearly established constitutional right by citing a materially similar case decided by the Supreme Court, the regional circuit court, or the relevant state supreme court, or by showing "that the case fits within that exceptional conduct which so

21

obviously violates the Constitution that prior case law is unnecessary." Teal, 603 F. App'x at 821; see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (stating that a plaintiff cannot show that the law is clearly established by relying on general allegations or broad legal truisms).

In excessive force cases, qualified immunity applies unless every reasonable officer in the defendant's position would have concluded that the force used was unlawful. Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000); see also Saunders v. Duke, 766 F.3d 1262, 1267 (11th Cir. 2014) (stating that the court must determine whether the officer's conduct was objectively reasonable given the facts confronting the officer and must not consider such reasonableness with "the 20/20 vision of hindsight"). Under Eleventh Circuit precedent, the facts that a suspect is not resisting and is obeying commands weighs against finding that a gratuitous and excessive use of force is protected by qualified immunity. See Saunders, 766 F.3d at 1265 (listing cases).

Here, "there can be no doubt that [Officer Boyd] was acting in his discretionary capacity when he arrested [Plaintiff]." Lee, 284 F.3d at 1194. Thus, Officer Boyd enjoys qualified immunity unless Plaintiff has pleaded sufficient facts to establish a constitutional violation and that the unlawfulness of Officer

22

Boyd's actions was "clearly established" at the time of the alleged violation. See Glasscox v. Argo, City of, 903 F.3d 1207, 1213 (11th Cir. 2018).

After careful review—and viewing the facts in the light most favorable to Plaintiff—the Court finds that Plaintiff's allegations show that Officer Boyd's use of force was excessive under the circumstances. First, Plaintiff's encounter with officers arose out of a misdemeanor arrest warrant involving an alleged non-violent violation of a bond condition. To be sure, Plaintiff did not consent to his arrest and stated that he would turn himself in the next week. This decision led to the hours-long standoff between Plaintiff and numerous GCPD officers. The facts as alleged in the Complaint, however, show that Plaintiff did not threaten officers on the scene[9] or commit any acts of violence. Rather, Plaintiff separated himself from officers by staying in his house. When Plaintiff left his house, he did so through the back door and without incident. He then informed the GCPD by phone that he intended to turn himself in, and he volunteered to meet officers behind his house to surrender himself.

---

[9] As alleged in the Complaint, Plaintiff's statement to Lieutenant Klok over the phone that he "would hate to hurt a brother in blue" was not made to anyone on the scene. And although some allegations indicate that Lieutenant Klok was communicating with officers on the scene, no allegations show that officers on the scene knew of Plaintiff's statement to Lieutenant Klok or viewed it as a threat.

23

When Plaintiff approached officers to turn himself in, the only items in his hands were his shoes. Plaintiff alleges that officers shouted conflicting commands at him as he approached. Viewing the facts in the light most favorable to Plaintiff, he attempted to follow commands by holding his hands up to show he was not armed and that he did not intend to resist arrest. Despite Plaintiff's stance, Officer Boyd drew and discharged his taser, tasing Plaintiff for two pulses.

Looking to the factors under Graham, the allegations do not show that a severe crime had been or was being committed. The underlying warrant was for a non-violent bond violation, and the non-violent standoff clearly had ended by the time Officer Boyd tased Plaintiff. Next, viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff did not pose an immediate threat to officers and was not actively resisting or attempting to evade arrest. The standoff had ended, Plaintiff had informed the GCPD that he was surrendering himself, and he kept his hands raised in the air as he approached officers. While the context of the standoff certainly colors this encounter, the facts as alleged show that at the time of the incident, Plaintiff posed no threat to officers or threat of flight. Similarly, to the extent Plaintiff was not following certain commands to lie down, the facts show that he was following other commands to keep his hands

24

raised, which he did to show that he was attempting to surrender himself. Under those circumstances, the need for application of force at that moment was limited. It follows that under the facts alleged, Officer Boyd's use of a taser for two pulses was disproportionate to the need to use force. Thus, the Court finds that under these allegations, Officer Boyd's use of the taser constituted excessive force.

The Court's conclusion finds support in Eleventh Circuit caselaw. In Fils v. City of Aventura, the Eleventh Circuit found that the use of a taser on a suspect constituted excessive force when the suspect: (1) was being arrested for a non-serious crime; (2) did not pose a threat to anyone's safety; and (3) put his hands in the air upon seeing the taser, took a step backward, and did not resist arrest or ignore commands from the officer. 647 F.3d at 1288–89. The Court finds the facts in Fils to be materially similar to those alleged here. Although the allegations here show that Officer Boyd's acts followed a long standoff, that standoff had ended. As such, the circumstances facing Officer Boyd when he tased Plaintiff did not allow for a reasonable officer to believe that such a use of force was necessary or proportionate.[10] After all, the Court must assess Officer Boyd's acts at the time he

---

[10] To that end, this case differs from Teal v. Campbell, which Defendants cite. In that case, the plaintiff had led officers on a high-speed chase, crashed his vehicle, and ran

25

allegedly used excessive force. Thus, even if Plaintiff had resisted arrest earlier, the Court looks to whether he was resisting arrest when he was tased. See Hadley v. Gutierriz, 526 F.3d 1324, 1330–31 (11th Cir. 2008) (finding officer's gratuitous punch to be excessive force when the suspect was not resisting arrest); Smith v. Mattox, 127 F.3d 1416, 1418-20 (1997) (affirming denial of qualified immunity where excessive force was used against suspect who had previously threatened officers and fled but had "docilely submitted to arrest" at the time of the excessive

---

from officers who ordered him to put his hands up. Teal, 603 Fed. App'x at 821. The plaintiff soon fell to the ground, at which point arresting officers allegedly beat, kicked, and tased him multiple times. Id. The officers stated that when the plaintiff was on the ground, he continued to ignore their commands to put his hands behind his back and stop resisting. Id. The Eleventh Circuit reversed the district court's denial of qualified immunity at summary judgment. Id. at 823. The Eleventh Circuit found that under the facts of the case, it would not have been readily apparent to a reasonable officer that the plaintiff, by falling to the ground, had stopped resisting arrest. Id. at 822. For supporting evidence, the court noted that the officers' acts occurred minutes after a high-speed car chase, seconds after the plaintiff attempted to evade officers, and while the plaintiff was ignoring officers' clear commands to put his hands behind his back. See id. Given that context, the Eleventh Circuit determined that it would not "have been readily apparent to the officers that their use of tasers would violate the Constitution." Id. at 823. Here, however, Plaintiff allegedly had informed the GCPD that he was surrendering himself. Also, the circumstances facing Officer Boyd were far different than those the officers faced in Teal. In Teal, the officers had just engaged in a high-speed chase and were pursuing a fleeing suspect who had fallen to the ground, apparently by accident, and who was not obeying commands. Reasonable officers faced with those facts would understandably believe that a heightened use of force would be needed to detain the suspect. Such circumstances were absent here because Plaintiff had verbally expressed his intent to surrender himself, and his acts were in harmony with that intent. Those facts weigh in Plaintiff's favor.

26

force). The Complaint's allegations show that Plaintiff was not resisting arrest when Officer Boyd tased him. Further, as in Fils, Plaintiff was not fleeing, was in the process of surrendering (which he had told the GCPD), was not armed, and was attempting to comply with officers' commands. Under these facts, Officer Boyd used excessive force in violation of the Fourth Amendment when he tased Plaintiff with two pulses. See Stephens v. City of Tarrant, No. 2:16-CV-274-KOB, 2017 WL 2797080, at *13–16 (N.D. Ala. June 28, 2017) (finding that the plaintiff had stated an excessive force claim regarding officers' use of a taser against him when he was unarmed, had not committed a serious or violent crime, was not an immediate threat, and was not resisting arrest).

Looking to other relevant caselaw from the Eleventh Circuit, the alleged facts of this case differ markedly from those in Draper v. Reynolds, which also involved the use of a taser. 369 F.3d 1270. In that case, the plaintiff had repeatedly refused to comply with officers' orders, was gesturing in an agitated manner, had screamed obscenities at the officers, and was otherwise acting belligerently. Id. at 1277–78. Those acts occurred during a traffic stop and within a relatively short timeframe. See id. at 1273–74. The Eleventh Circuit found that those facts showed that the officers were facing a "difficult, tense and uncertain situation." Id. at

27

1278. Thus, the court found that the use of a taser was reasonably proportionate and was not excessive force. Id. The facts here differ because, as discussed above, Plaintiff was no longer resisting arrest, and he was in the process of surrendering himself without posing a threat to officers. Thus, the Court finds that this case is factually distinguishable from Draper.

Having found that Officer Boyd's use of force was unreasonable under the circumstances and in violation of the Fourth Amendment, the Court now turns to the second prong of Defendants' qualified immunity argument: Determining whether the constitutional violation was clearly established at the time of the July 26, 2019, incident. Having reviewed the facts alleged in this case and the caselaw capable of creating clearly established law on this point, the Court determines that it was clearly established at the time of the incident that Officer Boyd's use of force was excessive and in violation of Plaintiff's Fourth Amendment rights. Namely, the Court finds that Fils, an Eleventh Circuit decision issued in 2011, is a case with materially similar facts that clearly established that repeated use of a taser against a compliant, unarmed suspect who poses no immediate safety risk constitutes unreasonable, disproportionate, and excessive force. 647 F.3d at 1288–89; see also Stryker v. City of Homewood, 978 F.3d 769, 775 (11th Cir. 2020) (citing

28

Fils to support the proposition that it is "clearly established" in the Eleventh Circuit that "employing a taser on a compliant, nonthreatening suspect violates the Constitution"); cf. Oliver v. Fiorino, 586 F.3d 898, 906–08 (11th Cir. 2009) (finding that officers did not enjoy qualified immunity when their repeated use of tasers against an individual was "grossly disproportionate to any threat posed"). This Court is not alone in finding that Fils has established clear law regarding use of tasers under similar facts. E.g., Hernandez v. Miami-Dade Cnty., No. 1:21-CV-22656, 2022 WL 2194635, at *5 & n.4 (S.D. Fla. May 31, 2022), report and recommendation adopted, No. 1:21-CV-22656, 2022 WL 2191686 (S.D. Fla. June 17, 2022); Gomez v. Jackson, No. 1:18-CV-00963, 2020 WL 4048061, at *8–9 (N.D. Ga. July 20, 2020); Mannor v. Pearce, No. 4:15-CV-01413-SGC, 2018 WL 1456638, at *5 (N.D. Ala. Mar. 23, 2018); Stephens, 2017 WL 2797080, at *13–16; cf. Fuqua v. Hess, No. 3:16-CV-01510-HNJ, 2019 WL 450835, at *13 (N.D. Ala. Feb. 5, 2019) (relying on Fils to determine that there was an issue of material fact as to whether the use of a taser on a suspect who was not resisting arrest, disobeying instructions, or threatening anyone was an unreasonable use of force); Porter v. City of Enter., No. 1:10CV1107-MHT, 2013 WL 1294632, at *3 (M.D. Ala. Mar. 28,

29

2013) (stating that the opinion in Fils "all but require[d]" the court to find that the use of a taser against a compliant suspect was an unreasonable use of force).

Defendants' opposing arguments do not convince the Court that Officer Boyd enjoys qualified immunity under the alleged facts. Specifically, the Court rejects Defendants' argument that Officer Boyd's use of a taser falls within the realm of *de minimis* force. As this Court recently noted, "[a] taser is a weapon and using it against a suspect is not the same as pushing, shoving, or grabbing him." Gomez, 2020 WL 4048061, at *8. Whereas pushing and shoving commonly are incidental instances of *de minimis* force used during an arrest, courts have found that the discharge of a taser rises to another level of force that can be excessive, depending on the circumstances. E.g., Fils, 647 F.3d at 1288 (finding that officer used excessive force when he tased a compliant suspect); Bratt v. Genovese, 2015 WL 12835684, at *6 n.8 (M.D. Fla. Nov. 23, 2015) (disagreeing with position that "the use of a taser constitutes only the application of *de minimis* force"); Borton v. City of Dothan, 734 F. Supp. 2d 1237, 1251 (M.D. Ala. 2010) (rejecting argument that use of a taser constituted *de minimis* force). The cases Defendants cite to support their *de minimis* argument concern shoving, pushing, and similar acts. They do not convince this Court to find that the use of a taser constitutes *de*

30

*minimis* force. Moreover, the fact that a taser is not necessarily a deadly weapon, as Defendants argue (Doc. No. [2-1], 11–12) does not mean that it necessarily is a *de minimis* force weapon. Obviously, there is ample room on the spectrum between *de minimis* and deadly, and the Court finds that the use of a taser in this case lies far away from *de minimis* on that spectrum.

At the motion-to-dismiss stage, if the plaintiff alleges "a gratuitous use of force," the court should not dismiss the Fourth Amendment claim. Saunders, 766 F.3d at 1267. As discussed above, the Court finds that Plaintiff has alleged a gratuitous use of force under the circumstances. Of course, further factual development in discovery may compel a different finding at summary judgment. At the pleadings stage, however, the Court finds that it must not dismiss Plaintiff's Fourth Amendment excessive force claim. Accordingly, Defendants' Motion to Dismiss is due to be denied as to the Fourth Amendment portion of Count One.

**D.      State-Law Claims Against the Individual County Defendants**

Defendants argue that the state-law claims against the Individual County Defendants should be dismissed. Doc. No. [2-1], 13–20. Defendants make several arguments regarding these claims, which the Court addresses separately below.

31

### 1. *The Individual County Defendants Do Not Enjoy Official Immunity at This Stage*

First, Defendants argue that the Court should dismiss Plaintiff's state-law claims against the Individual County Defendants because they enjoy official immunity from liability. Doc. No. [2-1], 13–16. They contend that the Complaint offers only "generalized statements regarding alleged malice" and fails to allege facts to support the actual malice or intent to injure required to overcome official immunity. Id. In response, Plaintiff argues that official immunity does not apply because the facts underlying the state tort claims show an intentional, malicious conspiracy to violate Plaintiff's rights. Doc. No. [6], 16–17. In reply, Defendants argue that the Court should ignore any implication of a conspiracy claim—which is not stated in the Complaint—and should find official immunity because there are no allegations of actual malice or intent to harm. Doc. No. [11], 3–4.

Under Georgia law, public agents can be sued in their official capacities only if they negligently performed a ministerial duty or acted with actual malice or actual intent to cause injury while performing a discretionary function. Teston v. Collins, 217 Ga. App. 829, 830, 459 S.E.2d 452, 454 (1995). "Whether a duty is ministerial or discretionary turns on the character of the specific act itself." Reed v. DeKalb Cnty., 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

Teston, 217 Ga. App. at 830, 459 S.E.2d at 454. "[A] police officer's decision to make an arrest is a discretionary function within the scope of his or her official authority." Rodriguez v. Kraus, 275 Ga. App. 118, 119, 619 S.E.2d 800, 802 (2005). Similarly, an officer's use of force is generally a discretionary act. See Mattox v. Bailey, 221 Ga. App. 546, 547, 472 S.E.2d 130, 131 (1996). Also, "[t]he decision to seek an arrest warrant is a discretionary act." Anderson v. Cobb, 258 Ga. App. 159, 160, 573 S.E.2d 417, 419 (2002).

Official immunity protects public agents from liability for discretionary acts done within the scope of their official authority and without willfulness, malice, or corruption. Teston, 217 Ga. App. at 830, 459 S.E.2d at 454. Thus, public officials can be liable for discretionary acts done with malice or an intent to injure. Marshall v. Browning, 310 Ga. App. 64, 67, 712 S.E.2d 71, 74 (2011).[11] And because

---

[11] "[A]ctual malice requires a deliberate intention to do wrong and denotes express

33

acts such as arrests generally are discretionary acts, a defendant enjoys official immunity for such an act unless he undertook it with malice or an intent to injure. See Patrick v. Andrews, 356 Ga. App. 801, 805–06, 849 S.E.2d 241, 245–46 (2020).

To start, the various alleged acts by the Individual County Defendants that give rise to the state-law claims include decisions regarding whether to use force against, arrest, and prosecute Plaintiff. See Doc. No. [1-1], ¶¶ 87–106. Because those acts required the exercise of personal deliberation and judgment, the Court finds that they were discretionary acts. Thus, at this pleadings stage, official immunity applies unless the Complaint alleges that the discretionary acts were done with willfulness, malice, or corruption.

After careful review, the Court finds that the Complaint sufficiently alleges willfulness, malice, or corruption to survive Defendants' Motion to Dismiss. To be sure, Plaintiff's Complaint is not a model pleading. But it does give a detailed factual recitation showing an officer tasing Plaintiff, orders for "unsubstantiated"

---

malice or malice in fact." Selvy v. Morrison, 292 Ga. App. 702, 704, 665 S.E.2d 401, 404–05 (2008) (citations and internal quotations omitted). Actual malice goes beyond implied malice or a reckless disregard for others; it is instead a deliberate intention to cause the harm suffered by the plaintiffs. Id. at 704–05, 665 S.E.2d at 405; see also Merrow v. Hawkins, 266 Ga. 390, 391, 467 S.E.2d 336, 337 (1996) (holding that "'actual malice' requires a deliberate intention to do wrong").

34

warrants to be taken out against Plaintiff, and an inter-county request to revoke

Plaintiff's bond, which caused him to be prosecuted and incarcerated without

cause. See Doc. No. [1-1], ¶¶ 14–66. Plaintiff also alleges that he was prosecuted

"with malice" and that the acts taken by the Individual County Defendants were

"intentional, without justification, and solely with the tortuous actual intent to

cause injury." Id. ¶¶ 72, 87–91. While the latter allegations border on conclusory,

the Court finds that they, combined with the preceding factual allegations, show

the type of malice and deliberate intention to do wrong necessary to overcome

official immunity at the pleadings stage. Thus, the Court finds that Defendants'

Motion to Dismiss is due to be denied as to official immunity.

### 2.   *Plaintiff States a Claim for False Arrest*

Defendants argue that the Court should dismiss Plaintiff's false arrest

claim because Plaintiff has failed to show that the Individual County Defendants

acted maliciously and without probable cause. Doc. No. [2-1], 16–17. Plaintiff

responds that the Individual County Defendants are alleged to have taken out

false and fabricated warrants with the intent to injure Plaintiff, which is sufficient

to survive the Motion to Dismiss. Doc. No. [6], 18. Also, noting that the Court is

considering a motion to dismiss rather than a motion for summary judgment,

Plaintiff argues that Defendants are incorrect to contend that Plaintiff's claim fails because "the record contains no evidence of malice or intent to injure." Id. (citing Defendants' brief). Defendants reply that Plaintiff cannot show that the arrests occurred with the requisite actual malice and without probable cause because "Plaintiff cannot point to any evidence of malice in his arrest" and "the record contains no evidence of malice or intent to injure." Doc. No. [11], 4–5.

"An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." O.C.G.A. § 51-7-1. Thus, the elements for a false arrest claim under Georgia law are "(1) an arrest under the process of law, (2) without probable cause, and (3) made maliciously." Desmond v. Troncalli Mitsubishi, 243 Ga. App. 71, 74, 532 S.E.2d 463, 467 (2000). The malice necessary to state a false arrest claim "may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual." McKissick v. S.O.A., Inc., 299 Ga. App. 772, 777, 684 S.E.2d 24, 29 (2009). "Malice may be inferred from a total lack of probable cause." Wills v. Arnett, 306 Ga. App. 503, 505, 702 S.E.2d 646, 648 (2010). "No probable cause exists if a defendant knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete

36

statement of the facts as they existed, or if he concealed facts." McKissick, 299 Ga. App. at 775, 684 S.E.2d at 28 (cleaned up). Also, a plaintiff alleging a false arrest claim must allege "that the prosecution terminated in favor of the complaining party." Desmond, 243 Ga. App. at 74, 532 S.E.2d at 467.

First, Plaintiff is correct to question Defendants' repeated[12] assertions that the record contains no "evidence" to support Plaintiff's allegations. The Court is ruling on a motion to dismiss, not a motion for summary judgment. Generally, a court does not consider evidence when ruling on a motion to dismiss. See, e.g., Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC, 508 F. Supp. 3d 1268, 1274–75 (N.D. Ga. 2020) (declining to consider evidence in relation to motion to dismiss). To the extent Defendants are arguing that Plaintiff's claim should be dismissed due to lack of evidence to support it, that argument fails.

Second, after carefully reviewing the Complaint, the Court finds that it states a claim for false arrest. Plaintiff alleges that he was arrested under process of law. He alleges that the arrest warrant was false and unsubstantiated, and that

---

[12] Defendants erroneously refer to "evidence" four times in their Motion to Dismiss brief (Doc. No. [2-1], 14, 16–17) and then double down on this mistake by using that term three times in their reply brief (Doc. No. [11], 4–5, 7).

the arrest itself lacked probable cause. He also alleges that the Individual County Defendants acted with malice in causing his arrest, which they allegedly knew was done without probable cause. Finally, Plaintiff alleges that all charges against him ultimately were dropped. Because Plaintiff alleges the elements for a false arrest claim, the Court finds that the Motion to Dismiss is due to be denied as to this claim. Whether evidence will sustain this claim at summary judgment is a matter the Court will address at the appropriate time.

### 3. *Plaintiff Fails to State a Claim for Malicious Prosecution*

Defendants contend that the Court should dismiss Plaintiff's malicious prosecution claim because the warrant was dismissed and the criminal charges terminated in his favor. Doc. Nos. [2-1], 17–18; [11], 5. Defendants also argue that Plaintiff's false arrest claim precludes his malicious prosecution claim. See id. at 18. In response, Plaintiff argues that he can bring a malicious prosecution claim as an alternative theory of recovery. Doc. No. [6], 19. Further, Plaintiff argues that he alleges the elements of a malicious prosecution claim, including prosecution and a resulting incarceration. Id. at 19–20.

A malicious prosecution claim involves "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes

38

damage to the person prosecuted." Desmond, 243 Ga. App. at, 74, 532 S.E.2d at 467 (quoting O.C.G.A. § 51-7-40); see also Ferrell v. Mikula, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008) (defining malicious prosecution as "detention with judicial process followed by prosecution"). The elements of a malicious prosecution claim are: "(1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." Lagroon v. Lawson, 328 Ga. App. 614, 621, 759 S.E.2d 878, 884 (2014) (citation omitted). "An inquiry before a 'committing court' is a required element of [a] malicious prosecution claim." Stephens v. Zimmerman, 333 Ga. App. 586, 590, 774 S.E.2d 811, 815 (2015).

Georgia law distinguishes between false arrest and malicious prosecution. Id. While false arrest is detention under process of law, malicious prosecution is "detention with judicial process followed by prosecution." Id. at 589–90, 774 S.E.2d at 815 (citation omitted); see also Perry v. Brooks, 175 Ga. App. 77, 77, 332 S.E.2d 375, 377 (1985) (stating that whether one can bring a claim for false arrest or malicious prosecution "depends on whether or not he is actually prosecuted under the warrant"). Thus, these two claims generally are "mutually exclusive,"

and "if one right of action exists, the other does not." <u>Perry</u>, 175 Ga. App. at 78, 332 S.E.2d at 377; <u>see also</u> <u>Stephens</u>, 333 Ga. App. at 590, 774 S.E.2d at 815 (stating that a false arrest claim arises if the warrant is dismissed after the arrest, but that a malicious prosecution claim is the "exclusive remedy" if a prosecution is carried out).

As stated above, Plaintiff has alleged his arrest, the issuance of a warrant, malice, lack of probable cause, and that charges against him ultimately were dropped. Moreover, he has alleged that a magistrate judge was involved in the issuance of at least one of the warrants. Plaintiff has also alleged that he was "maliciously prosecuted and forced to remain incarcerated, completely isolated, for fifteen days." Doc. No. [1-1], ¶ 64. After careful review, however, the Court determines that Plaintiff's claim that he was prosecuted amounts to the kind of conclusory statement that the trial court can ignore at the pleadings stage. That is especially so when the surrounding allegations undermine the conclusory statement. Here, Plaintiff alleges that after he was arrested and detained, the Gwinnett County District Attorney's Office determined there was not probable cause to pursue charges against Plaintiff, and thus the charges against Plaintiff were dismissed. Doc. No. [1-1], ¶¶ 65–66. In other words, even though Plaintiff

was allegedly detained for fifteen days, the District Attorney's Office did not prosecute Plaintiff. The Court cannot find that Plaintiff has stated a viable claim for malicious prosecution.

Also, as stated above, false arrest and malicious prosecution claims often are mutually exclusive and cannot proceed together. That is the case here. Thus, the motion to dismiss Plaintiff's malicious prosecution claim is due to be granted.

### 4.    *Plaintiff States a Claim for False Imprisonment*

Next, Defendants contend that the Court should dismiss Plaintiff's false imprisonment claim because "Plaintiff was arrested on valid warrants." Doc. Nos. [2-1], 18; [11], 5–6. In response, Plaintiff argues that he states a claim for false imprisonment because he alleges that the warrants were procedurally void and secured in bad faith. Doc. No. [6], 20–23.

A claim for false imprisonment arises from an unlawful detention without judicial process or without the involvement of a judge at any point. Ferrell, 295 Ga. App. at 329, 672 S.E.2d at 10 (citing O.C.G.A. § 51-7-20). "[T]he key distinction between malicious arrest and false imprisonment . . . is whether the person was detained using a warrant or not." Id. The elements of this claim are (1) detention and (2) its unlawfulness, and a party need not show "malice and want of probable

41

cause." Id. at 329, 672 S.E.2d at 10–11. If, however, one is arrested pursuant to a warrant that is "procedurally void" or obtained due to "defective process," and the warrant was "secured in bad faith," then "there is a cause of action for false imprisonment." Sheffield, 354 Ga. App. at 667, 839 S.E.2d at 300. A claim for false imprisonment can proceed concurrently with a claim for false arrest. Id. at 668, 839 S.E.2d at 301.

Here, although Plaintiff alleges that warrants were obtained for his arrests, he does not necessarily allege that those warrants were valid. He alleges that at least two warrants were "unsubstantiated" and "false." Plaintiff alleges that these warrants were carried out in violation of certain Georgia laws requiring that an officer with first-hand knowledge of the events underlying the warrants swear out those warrants. Plaintiff also alleges that the Individual County Defendants conspired for the issuance of these false warrants, which shows bad faith. Under these facts, the Court finds that Plaintiff has stated a claim for false imprisonment. The Motion to Dismiss is due to be denied as to this claim.

### 5.    *Plaintiff's Defamation Claim Is Due to Be Dismissed*

Defendants argue that the Individual County Defendants are immune from liability for Plaintiff's defamation claim. Doc. No. [2-1], 18–19. In response,

Plaintiff concedes that he "has found no statute or case law to allow Plaintiff to move forward as to this count." Doc. No. [6], 23. Thus, Plaintiff's defamation claim is due to be dismissed.

> ### 6.   *Plaintiff States Claims for Assault and Battery Against Officer Boyd But Not Against the Other Individual County Defendants*

Finally, Defendants argue that the Court should dismiss Plaintiff's assault and battery claims. Doc. No. [2-1], 20. As to the Individual County Defendants other than Officer Boyd, Defendants argue that no allegations show physical contact with Plaintiff. Id. And they argue that Officer Boyd, who is alleged to have had physical contact with Plaintiff, enjoys official immunity. Id. In response, Plaintiff concedes that Officer Boyd is the only Defendant potentially liable under these claims, but he argues that the claim survives against Officer Boyd because he does not enjoy official immunity. Doc. No. [6], 23–24.

As Defendants argue, Plaintiff's battery and assault claims as presented in this case require some form of physical or threatened physical contact and harm. See O.C.G.A. §§ 16-5-20, -23.1 Because the Individual County Defendants other than Officer Boyd are not alleged to have acted in a way that would give rise to such claims, these claims are due to be dismissed against them. But as for Officer

43

Boyd, the Court has already found that official immunity does not attach at this stage. Since Defendants' argument to dismiss these claims against Officer Boyd concern only official immunity, the Court finds that the Motion to Dismiss is due to be denied as to the assault and battery claims against Officer Boyd.

IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss (Doc. No. [2]). Defendants Gwinnett County and Gwinnett County Police Department are hereby **DISMISSED** from this lawsuit. Further, Plaintiff's Fourteenth Amendment claim in Count One is **DISMISSED**. Plaintiff's Fourth Amendment claim in Count One, however, may proceed. Plaintiff's malicious prosecution and defamation claims in Count Two are **DISMISSED**. And Plaintiff's assault and battery claims in Count Two are **DISMISSED** only as to Defendants Chief Doran, Assistant Chief Jones, and Corporal Lymber—these assault and battery claims may proceed against Officer Boyd. The Motion to Dismiss is **DENIED** as to the other claims in the Complaint, and discovery shall proceed on those claims as provided in the Scheduling Order (Doc. No. [14]).

**IT IS SO ORDERED** this 22nd day of August, 2022.


/s/ Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**